FILED

14 JAN 16 PM 2: 59

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFREDO SEPULVEDA-IRIBE,<br><br>Petitioner,<br><br>vs.<br><br><br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | CASE NO. 11-CV-1133-BEN/<br>08-CR-1809-BEN-1<br><br>**ORDER**<br><br>**(1) DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**<br><br>**(2) DENYING CERTIFICATE OF APPEALABILITY**<br><br>**(3) DENYING AS MOOT UNITED STATES' MOTION TO EXTEND TIME TO RESPOND**<br><br>[Civil Docket No. 1, Criminal Docket No. 74] |

Before this Court is Petitioner Alfredo Sepulveda-Iribe's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. (Docket No. 74)[1]. Petitioner now raises four claims, all related to his contention that he was not competent to stand trial. For the reasons stated below, the Motion is **DENIED**. The United States' Motion to Extend Time to Respond is **DENIED AS MOOT**.

///

---

[1] Unless otherwise stated, all docket numbers refer to the docket in the associated criminal case, 08-CR-1809-BEN-1.

## I. BACKGROUND

On June 4, 2008, Petitioner was indicted with a single count of being a deported alien found in the United States, in violation of 8 U.S.C. § 1326. (Docket No. 1). Petitioner was deemed competent by U.S. Magistrate Judge Nina L. Stormes on July 22, 2008, and a forensic evaluation report was filed. (Docket No. 13).

This Court scheduled Petitioner's jury trial for December 9, 2008. (Docket No. 26). On the date of trial, Petitioner refused to exit his cell. (Opp'n, Exh. A, Tr. of Proceedings from December 9, 2008 [Dec. 9 Tr.], at 2:6-8). This Court ordered Petitioner removed from his cell. (*Id.* at 2:11-12). When Petitioner appeared, this Court noted that he was disheveled and in a wheelchair, and that he was slumped in the chair and not looking at the court. (*Id.* at 6:11-15). It further noted that he had been "standing and very much willing to communicate" the day before. (*Id.* at 6:16-17). When addressed, Petitioner did not respond to the Court. (*Id.* at 6:18-19). The Court referred the matter for further evaluation. (*Id.* at 7:9-23). Counsel stated that he had never seen Petitioner in this condition, and that although he had been "lacking in communication" with Petitioner, he believed it had to do with Petitioner's other concerns. (*Id.* at 7:24-8:6). At a hearing later that day, this Court noted that a camera in Petitioner's holding cell indicated that Petitioner was doing fine and moving around that afternoon. (*Id.* at 19:12-17). Although this Court expressed the view that Petitioner was malingering, it granted defense counsel's request that an additional competency exam be conducted, and that a different psychologist be used. (*Id.* at 22-23; Docket No. 28).

A competency hearing was held on January 13, 2009. (Opp'n Exh. B, Tr. of Proc. on Jan. 13, 2009). The psychologist's report concluded Petitioner was competent to stand trial. (*Id.* at 2). This Court reviewed all the information submitted and concluded that it was "pretty evident" that he was competent to stand trial. (*Id.* at 4:6). The Court stated that Petitioner did attempt to manipulate the system to his benefit and advantage, but that the report concluded that it was "volitional" and that there was no

1   contrary evidence. (*Id.* at 4:9-13).

2       The jury trial commenced on January 14, 2009, and Petitioner was found guilty

3   of the sole count on January 15, 2009. (Docket No. 38). He was sentenced by this

4   Court to 92 months of imprisonment and three years of supervised release on July 6,

5   2009. (Docket Nos. 49, 51).

6       Petitioner signed the instant Motion on May 15, 2011. He claims that his

7   counsel was ineffective for failing to move for a new trial because Petitioner was not

8   competent (Ground 1), that this Court erred in allowing the trial to begin (Ground 2),

9   that his counsel should not have proceeded because Petitioner was not competent to

10   begin trial (Ground 3), and the counsel was ineffective for failing to pursue or consider

11   a plea bargain (Ground 4).

12      **II. LEGAL STANDARD**

13       A district court may "vacate, set aside or correct" the sentence of a federal

14   prisoner that was imposed in violation of the Constitution or a law of the United States.

15   28 U.S.C. § 2255(a). A district court must hold an evidentiary hearing before denying

16   a § 2255 motion, unless it is conclusively shown that the prisoner is entitled to no

17   relief. 28 U.S.C. § 2255(b). However, if it is clear the petitioner has failed to state a

18   claim, or has "no more than conclusory allegations, unsupported by facts and refuted

19   by the record," a district court may deny a § 2255 motion without an evidentiary

20   hearing. *United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986).

21      **III. DISCUSSION**

22       A. Procedural Default

23       The Government points out that Petitioner failed to raise his arguments about

24   competence on direct appeal. (Opp'n at 5-6). Where a petitioner fails to raise an

25   argument on direct appeal, he may not normally raise the issue in a habeas petition.

26   *See Bousely v. United States*, 523 U.S. 614, 622 (1998); *United States v. Frady*, 456

27   U.S. 152, 167-68 (1982). This procedural default can be excused if he can show

28   "cause" and "prejudice," or actual innocence. *See Bousely*, 523 U.S. at 622. Petitioner

has not attempted to make either showing. He has therefore procedurally defaulted this claim. He did not attempt to make such a showing in his reply brief after the Government raised the issue in its response. Additionally, the Court notes that he did not contend he was incompetent on appeal, and admits it was a "cut and dry" case against him. (Memo at 7).

As such, Petitioner has procedurally defaulted on Ground Two, in which he claims it was error for this Court to begin trial. Petitioner's other grounds pertain to accusations of ineffective assistance of counsel (IAC), which he may raise in a Section 2255 motion without first pursuing the issue on direct appeal. *See, e.g.*, *United States v. Mal*, 942 F.2d 682, 689 (9th Cir. 1991).

### B. Ineffective Assistance of Counsel (Grounds 1, 3, 4)

#### i. *Legal Standards for IAC*

A petitioner asserting an IAC claim must demonstrate that (1) defense counsel's performance was deficient; and (2) this deficient performance prejudiced the petitioner's defense. *Strickland v. Washington*, 466 U.S. 668, 690-92 (1994). To establish performance is deficient, Petitioner must show that his counsel's representation "fell below an objective standard of reasonableness." *Id.* at 687-688. Because of the difficulties inherent in evaluating the performance of counsel after the fact, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. To demonstrate prejudice, a defendant must show that there is a "reasonable probability" that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

#### ii. *Legal Standard for Competency*

In determining whether a defendant is competent to stand trial, a court must determine if he a) has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and b) whether he has a rational as well

1   as factual understanding of the proceedings against him. *Dusky v. United States*, 362
2   U.S. 402 (1960).  In a habeas proceeding, a petitioner is entitled to an evidentiary
3   hearing on the issue of competency to stand trial if he presents sufficient facts to create
4   a real and substantial doubt as to his competency, even if those facts were not presented
5   to the trial court. *Boag v. Raines*, 769 F.2d 1341, 1343 (9th Cir. 1985).

6                    *iii. Petitioner's Competence*

7           Petitioner's IAC claims are founded on his alleged incompetence at the time of
8   trial. However, Petitioner was found competent twice, including a finding made by this
9   Court the day before his trial began.  A new psychologist examined Petitioner and
10  deemed him competent. This Court notes that the transcript reflects that Petitioner was
11  able to discuss his concerns with this Court on January 13, and that his comments
12  reflect his ability to understand the charges and proceedings.  (*See* Jan. 13 Tr.).
13  Additionally, the Government is correct in pointing out that there was no contrary
14  expert opinion and Petitioner did not contest the finding. (Opp'n at 7).

15          Petitioner discusses several comments in the record which he contends support
16  his assertion that he was not competent.  He points out that this court noted at
17  sentencing that "it is pretty evident to me from the very beginning that something is
18  going on." (Docket No. 66, Sent. Tr. 9:8-12), and argues this is "significant indicia"
19  that this Court believed that petitioner suffered from a mental disease or defect.
20  (Memo at 3).  However, this Court began the aforementioned sentence by noting that
21  Defendant was not incompetent or insane. (Sent. Tr. 9:8-10).

22          Petitioner cites comments from his counsel at the January 13 competency hearing
23  in which counsel stated that he did not know "whether or not it rises to the level of
24  competency," and that he had been unable to communicate with Petitioner because he
25  "basically refused to talk to me about the case." (Jan. 13 Tr. at 3:1-8). Petitioner states
26  that counsel is often in the best position to know if a defendant can participate in his
27  defense, and that counsel stated that Petitioner was not able, or not willing based on his
28  mental state, to cooperate in his defense. (Memo at 4-5).  However, the transcript

1   reveals that counsel was referring to Petitioner's problems with the government and
2   things that happened with his son.  (*Id.* at 2:24-3:8).  Counsel indicated that they
3   created communication challenges and were a problem in the representation.  (*Id.* at
4   3:2-8).  As discussed in open court, the psychologist's report concluded that these
5   issues in cooperating with counsel and the legal system were "volitional," and not due
6   to a mental disorder.  (*Id.* at 3:10-14).  Instead, the report concluded that Petitioner
7   thought such behavior was in his best interest.  (*Id.* at 3:14-15).

8          Petitioner also points to statements he made to this Court at the January 13
9   hearing in which he made claims of being a citizen who faced conspiracies from people
10  who violated his rights. (Memo at 4; Jan. 13 Tr. at 6:12-25).  As discussed above, a
11  psychologist evaluated his behavior and concluded that Petitioner was competent.

12                 *iv. Counsel was not incompetent in failing to object to beginning the trial*
13         Petitioner provides no basis for this Court to find counsel deficient for failing to
14  object to the commencement of trial.  Even after Petitioner had been found competent
15  by a Magistrate Judge and a camera in Petitioner's holding cell indicated that Petitioner
16  was malingering, defense counsel requested and obtained a second competency
17  evaluation from a different psychologist.  The new psychologist deemed Petitioner
18  competent, and this Court found him so.  There is no basis to conclude that it was not
19  within the range of reasonable professional assistance for counsel not to object in the
20  wake of this Court's competency finding.

21         Petitioner makes a brief reference to informing the Court that his counsel thought
22  he was crazy and would not effectively defend him.  Petitioner makes no citation, but
23  is likely referring to his statements on January 13, in which Petitioner expressed
24  disagreement with a particular action not taken by counsel. (Jan. 13 Tr at 6:3-7:7).
25  This Court addressed Petitioner's concerns, pointing out that he had just been found
26  competent and asking counsel about the particular decision that Petitioner questioned.
27  (*Id.* at 6:15-17; 7:9-8:15).  The Court explained to Petitioner that although he wanted
28  his lawyer to pursue certain arguments, his attorney could not do so legally or ethically.

1  (*Id.* at 7:25-8:15; 8:5-9).

2              *v.  Counsel was not incompetent for failing to move for a new trial*

3       As stated above, Petitioner was deemed competent the day before his jury trial
4  began.  It was therefore within the range of reasonable professional assistance not to
5  demand a new trial on the basis of his competency when the determination was made.

6       Additionally, nothing occurred in the course of the short jury trial which would
7  provide a ground for counsel to claim that there had been any change in Petitioner's
8  status.  Indeed, a court need only inquire into competency when there is evidence
9  raising "sufficient doubt" of a defendant's competency. *See United States v. Ives*, 574
10  F.2d 1002, 1004 (9th Cir. 1978).  Such doubt can be based on all available pertinent
11  evidence, such as irrational behavior, demeanor at trial, or medical opinion. *See id.*
12  However, a hearing is only required where the doubt is "substantial" or "bona fide,"
13  *Hernandez v. Ylst*, 930 F.2d 714, 716 (9th Cir. 1991), and cases finding sufficient
14  evidence have found either "extremely erratic and irrational behavior" or lengthy
15  histories of psychosis and psychiatric treatment, *Boag v. Raines*, 769 F.2d at 1343.

16       The record does not indicate, and Defendant does not point to, any indication
17  that Petitioner's competency changed in the short period between the competency
18  finding on January 13 and the verdict on January 15.  Petitioner makes no argument
19  that there was any new basis for evaluating competency.  As Petitioner was found
20  competent before trial and there is no indication in the record of any change in his
21  status, there was no basis for counsel to ask this Court to order a new trial.  Where the
22  question of competency has been reviewed multiple times by different psychologists,
23  the Petitioner has very recently been found competent, and there is no new basis to find
24  him incompetent, this Court cannot say that reasonable counsel would have sought a
25  new trial.  Similarly, Petitioner's insinuation, not clearly raised in his Motion, that his
26  Counsel should have sought additional examinations must fail.  (Memo at 5).

27       Additionally, there is no evidence to suggest that Petitioner was prejudiced.
28  Even had Petitioner received a new trial, Petitioner states that his chances at trial were

1    "minimal and possibly non-existent." (Memo at 8). He concedes that the evidence
2    against him was "cut and dry," with no evidence to refute the charges. (*Id.* at 7).

3                    *vi. Counsel was not incompetent for failing to advise Petitioner regarding*
4                    *a plea deal*

5         Petitioner claims that his counsel should have "moved forward" in plea
6    negotiations because counsel knew Petitioner was unable to make good choices, and
7    counsel should have sought to get him a lower sentence. (Mot. at 7). Petitioner claims
8    that counsel did not make him aware that he faced "different sentencing ranges" if he
9    accepted a plea. (*Id.*) Petitioner appears to allege that counsel did not pursue a plea
10   deal or inform Petitioner that a plea deal might be beneficial. (Memo at 5-7). Speaking
11   generally, Petitioner states that the expectation or hope of a lesser sentencing, or the
12   convincing nature of evidence against an accused, "might well suggest the advisability
13   of a guilty plea." (*Id.* at 6-7). He states that given the nature of the evidence against
14   him, it would have been in his "favor and best interest" to seek a deal that might reduce
15   his sentence. (*Id.* at 7). He argues there is "no evidence" that counsel advised him that
16   a plea would serve his interest or explained sentencing exposures. (*Id.*)

17        However, the Government has provided evidence, albeit in the form of an
18   unsworn email, that defense counsel claims that he communicated a plea offer from the
19   government, advised Petitioner of the guideline ranges, and the consequences of
20   rejecting the deal. (Opp'n, Exh. D, Email from Marc Carlos).

21        To the extent Petitioner is claiming that counsel did not pursue a plea deal, the
22   court notes the absence of any supporting evidence that counsel did not pursue a plea
23   deal, or any evidence to suggest that counsel might have obtained a better deal. Any
24   claim that a better deal was available is speculation. Indeed, Petitioner concedes that
25   his case was "cut and dry," with no evidence to refute the charges. (Memo at 7).

26        Read liberally and in the context of implicit claims from the Government and
27   from defense counsel that a plea offer was made, Petitioner may also be arguing that
28   the plea deal was not communicated, or that the plea deal was not properly explained

to him. As a general rule, counsel has a duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. *Missouri v. Frye*, 132 S.Ct. 1399, 1408 (2012). "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Id.* at 1409.

Petitioner's claim must fail. In addition to the Government's claim that a plea deal was offered, discussions that took place in open court discussed the fact that Petitioner had elected not to plead and to go to trial, and that he continued to refuse to accept responsibility. (Sent. Tr. at 2:24-25; 4:4-6). Although Petitioner spoke at length about his case, he did not indicate any disagreement with these claims.

Additionally, the Ninth Circuit has denied habeas relief where a petitioner makes only self-serving claims that he was not properly counseled on the consequences of going to trial or discussing in detail the significance of the plea agreement offered. *Turner v. Calderon*, 281 F.3d 851, 879-881 (9th Cir. 2002). The Ninth Circuit found that a later, self-serving statement that the petitioner's lawyer told him that it was not a death penalty case did not suffice to establish that the petitioner was unaware of the possible verdict. *Id.* at 881. The Court specifically noted that:

> If the rule were otherwise, every rejection of a plea offer, viewed perhaps with more clarity in the light of an unfavorable verdict, could be relitigated upon the defendant's later claim that had his counsel better advised him, he would have accepted the plea offer.

*Id.* Petitioner presents no evidence, other than his own account, that he was not informed of all the possible benefits of a plea agreement. The discussion on the record indicates that a plea offer was made and rejected. If such an unsupported allegation can allow relief, every defendant who proceeds to trial will be able to relitigate their sentence in a collateral attack.

The Ninth Circuit in *Turner* also noted that counsel is not required to accurately predict what a jury or court might find, but is required to give the defendant the tools

1   he needs to make an intelligent decision about the plea agreement. *Id.* at 880-81 (no

2   relief where defendant knew he was death eligible, but counsel did not encourage him

3   to accept plea).  There is no contention here that Petitioner was not informed of the

4   maximum sentence that he faced, even if counsel had not given Petitioner a clear idea

5   of the different sentences he would receive if he pled or did not plead.

6        Finally, Petitioner fails to demonstrate prejudice.  Even if there were facts to

7   support a conclusion that Petitioner was not informed of a plea offer, or was not told

8   of a plea deal's possible effect on sentencing, he cannot show there was "reasonable

9   probability" that he would have taken the deal, given the record before this Court.

10  Although Petitioner now contends he might have received a reduction for "acceptance

11  of responsibility," he continued to profess his innocence at great length at his

12  sentencing. (*Id.* at 7:3-8:18; 10:13-17).  Petitioner's continued and strident insistence

13  upon his innocence, even after his conviction, undermines his ability to claim that he

14  would have taken the deal and accepted responsibility.  This Court also notes that

15  Petitioner repeatedly indicated that he did not like or trust his lawyer because the

16  lawyer was associated with the government, and apparently chose to refuse to

17  communicate with counsel.  It is apparent, based on this Court's experience, that it is

18  not reasonably probable that Petitioner would have listened to his lawyer and made a

19  deal with the government.

20       This Court also notes that, to the extent Petitioner is suggesting that counsel

21  should have pursued a plea agreement because Petitioner was incompetent to stand

22  trial, counsel for an incompetent defendant should not seek to have his or her client

23  sign away valuable constitutional rights if they cannot sufficiently understand what

24  they are doing.

25  **IV. EVIDENTIARY HEARING**

26       Unless the motion and the records of a case conclusively show that the prisoner

27  is entitled to no relief, a court is required to grant a hearing.  28 U.S.C. § 2255(b).

28  However, where the record demonstrates that a petitioner has failed to state a claim, a

district court may deny a § 2255 motion without an evidentiary hearing. *Quan*, 789 F.2d at 715. Given the foregoing discussion, this Court finds that Petitioner cannot succeed upon his claims.

## V. CONCLUSION

In accordance with the conclusions set forth above, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence is **DENIED**.

A court may issue a certificate of appealability where the petitioner has made a "substantial showing of the denial of a constitutional right," and reasonable jurists could debate whether the petition should have been resolved differently, or that the issues presented deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003). This Court finds that Petitioner has not made the necessary showing. A certificate of appealability is therefore **DENIED**.

**IT IS SO ORDERED**.

Dated: January 16, 2014

HON. ROGER T. BENITEZ
United States District Judge

11cv1133/08cr1809